## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CAROLYN D. TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.   CIV-11-1158-M |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT & RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (TR. ___). The parties have briefed their positions and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on April 13, 2009, alleging a disability beginning March 15, 2009 (TR. 10). The date of onset was later amended to November 2, 2009 (TR. 10). The applications were denied on initial consideration and on

reconsideration at the administrative level (TR. 10). Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a *de novo* hearing on March 4, 2011 (TR. 29). Plaintiff appeared with her attorney and testified in support of the applications (TR. 31, 32-47). A vocational expert (VE) also appeared and gave testimony at the request of the ALJ (TR. 32, 48-53). The ALJ issued a wholly unfavorable decision on May 27, 2011 (TR. 7-9, 10-23). On September 21, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (TR. 1-6). Thus, the opinion of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the

ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act for DIB through September 30, 2013 (TR. 10). The ALJ then followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ noted that Plaintiff had not engaged in gainful activity after the alleged onset date (TR. 12).

At step two, the ALJ determined that Plaintiff had the following severe impairments: history of anemia, history of generalized back and knee pain, moderate depression, and a social phobia (TR. 12). He also found that Plaintiff had the following non-severe impairments: hypertension and headaches (TR. 13). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 13).

The ALJ next considered Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR

> 404.1567(b) and 416.967(b) except she should not be required more than frequently to such things such things [sic] as climb stairs, balance, crouch, or crawl, should no more than occasionally stoop or bend; she is limited to simple, repetitive tasks and should not be required to have more than incidental contact with the public

(TR. 15).

At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform her past relevant work (PRW) as an assembly production welder, car hop, cashier, housekeeper, and certified nurse aide (TR. 20-21). At step five, the ALJ relied upon the testimony of the VE in determining that Plaintiff could perform the light, unskilled occupations of production inspector and press machine operator. (TR. 22). Thus, at step five the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB or SSI (TR. 22).

## ISSUES PRESENTED

Plaintiff raises two claims of error. First, she contends that "the decision of the ALJ presents a prima facie *Bjornson* reversible error." (Plaintiff's Opening Brief, 6). Plaintiff also contends that the ALJ did not properly weigh the medical opinions in the record. *Id.* at 12.

## ANALYSIS

### I. The ALJ's Credibility Assessment

Plaintiff contends that the ALJ applied the wrong legal standards in evaluating Plaintiff's credibility. According to Plaintiff the ALJ committed what she refers to as a

4

"*Bjornson* error," by using "boilerplate" language in his evaluation of Plaintiff's credibility (See Plaintiff's Opening Brief at pages 6-12).

In *Wilson v.* Astrue, 602 F.3d 1136 (10th Cir. 2010), the Tenth Circuit Court of Appeals restated the salient points a court must consider when reviewing credibility determinations:

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability").

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The Court also restated the process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether,

> considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

At the first phase of step four, the ALJ found that Plaintiff's RFC allows her to do light work with some nonexertional limitations (TR. 15). Then, after reciting the process required for the assessment of a claimant's symptoms and credibility, (TR. 15-16), the ALJ summarized Plaintiff's testimony regarding her allegedly disabling impairments:

> The Claimant testified that: She lives alone in her home in Ponca City, Oklahoma. She has supported herself with unemployment compensation, which will run out the Monday after the hearing. Her son was murdered and the murderer has not been caught, which has affected her. She mainly stays home. But she does go to church, works in the church kitchen, and is an usher at church. She goes out to pay bills and pick up medicine. She has people she "socializes with" but has no friends. She is at risk for losing her home. She has lost her car. She can sit 1-2 hours and stand 1-2 hours. She then testified that she could not do that all at one time. She can lift 20-25 pounds and walk 4-5 blocks. She can only "make it" for 4 hours before she has to lie down. She reads

6

> her Bible and novels. She cleans her house. She has days when she does not get out of bed, which may be 2-3 days a week. On a good day, she may lie down for 2 hours. The biggest reason she cannot work is her high blood pressure and "thinking too much"

(TR. 16). The ALJ also summarized a Third Person Function Report submitted by Plaintiff's sister, in which she reported that Plaintiff's daily activities are cleaning and doing yard work; taking care of her children and grandchildren when needed; cooking complete meals when not in pain; going out alone at least three to four times a week; the ability to shop in stores, pay bills, count change, handle a savings account, and use a checkbook/money orders; spending quality time with family and playing occasional bingo; and attending church regularly (TR. 16).

Before the ALJ summarized the medical evidence and considered other evidence relevant to the credibility analysis, he stated the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment

(TR. 16). Plaintiff objects to this language, referring to it as a "*Bjornson*" error.

In *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), the Seventh Circuit Court of Appeals found that the same conclusory, boilerplate language to which Plaintiff objects was drafted by the SSA for insertion into any ALJ decision. The Court concluded that

7

the boilerplate language implies that ability to work is determined without regard to the claimant's credibility, and that the ability to work is then used to discount the claimant's credibility. *Id.* at 644-645. In this case, as in *Bjornson*, the organization of the ALJ's decision suggests as much. In reality, of course, the assessment of a claimant's ability to work often depends at least in part on the credibility of his or her statements concerning the "intensity, persistence, and limiting effects" of symptoms. *Id.* at 645. In other words, "an applicant's credibility cannot be ignored in determining his ability to work." *Id.* at 646. As for mass use of SSA "templates" in decisions, the Seventh Circuit Court of Appeals warned, "The Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

The Tenth Circuit Court of Appeals has also disapproved of the use of boilerplate language to justify the rejection of a claimant's subjective complaints of pain or other symptoms. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). In *Hardman*, the ALJ recited boilerplate language, stating that full consideration had been given to claimant's subjective complaints in accordance with the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-7p, and *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir. 1987). But the ALJ then rejected the claimant's allegations of pain and other limitations, using more boilerplate language and few actual facts pertaining to the claimant's testimony:

> Claimant's allegations are not fully credible because, but not limited to, the objective findings, or the lack thereof, by treating and examining physicians, the lack of medication for

> severe pain, the frequency of treatments by physicians and the lack of discomfort shown by the claimant at the hearing

*Hardman*, 362 F.3d at 679. The Tenth Circuit explained the dangers of relying on such boilerplate language:

> Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.

*Id.* at 679 (citation omitted).

In this case, the ALJ included the boilerplate language from the SSA's template in describing his finding as to Plaintiff's credibility. But the ALJ's decision also includes a meaningful discussion of Plaintiff's testimony regarding her symptoms and nonexertional limitations, her daily activities, the nature and extent of medical treatment for her impairments, as well as other factors that bear on her credibility (TR. 18-19). The question in this case, then, is whether the ALJ sufficiently supported his credibility finding, despite the use of so-called "boilerplate" language. "[So] long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citing *Qualls v Apfel*, 206 F.3d

9

1368, 1372 (10th Cir. 2000)). The undersigned finds that the ALJ in the instant case sufficiently supported his credibility finding.

With regard to Plaintiff's back pain, the ALJ noted that x-rays taken at the Ponca City Medical Center following an automobile accident on May 4, 2009, showed no conspicuous fracture, dislocation, or destructive damage at levels C1-T1. (TR. 16). He also noted that Plaintiff's chiropractor, M.V. Farquharson, who saw her for neck and shoulder pain following the accident discharged her to return to work with no restrictions on May 18, 2009 (TR. 17). Plaintiff's primary care provider, Sharon Stewart, ARNP, advised Plaintiff to ask her attorney to recommend a disability physician as she did not do "disability physicals" (TR. 17). Plaintiff was seen in an emergency room on December 14, 2009, April 26, 2010, and May 19, 2010 (TR. 17-18). On this last occasion she reported she was out of pain medication; while there, she received Lortab and Flexeril, but was told that she would no longer be treated in the emergency room for her back pain but must instead consult with her primary care provider (TR. 17). On August 17, 2010, Plaintiff saw her primary care provider, Sharon Stewart, ARNP, complaining of low back pain; she admitted that she had not been taking her blood pressure medicine and had been buying Lortab off the street (TR. 18).

After this discussion, the ALJ summarized the evidence that he apparently found relevant to Plaintiff's claims of back and shoulder pain: Plaintiff had only sought occasional treatment for her back and shoulder pain, did not return to her primary care provider Sharon Stewart after she was informed that Stewart did not do disability

10

exams, and admitted to buying Lortab off the street (TR. 18). The ALJ also noted that her back and shoulder pain did not keep her from doing yard work—including mowing the lawn—cleaning her home, or working at her church in the kitchen as an a usher (TR. 19). Furthermore, the ALJ found no objective medical evidence showing back or knee limitations that would keep Plaintiff from performing light work (TR. 19).

The ALJ also noted that although Plaintiff complained of fatigue related to anemia, she admitted not taking iron pills as advised and thus had made little attempt to address the problem with medication or medical follow up (TR. 18).

The ALJ discussed the fact that Plaintiff had lost her job due to a business lay off in November 2009, and that there was no evidence of any significant deterioration in her medical condition since that time (TR. 19). The ALJ found this to support an inference that Plaintiff's medical condition did not preclude performance of her job because she was adequately performing it at the time of the layoff (TR. 19). In a similar vein, the ALJ noted that Plaintiff was drawing unemployment benefits up to the time of the hearing; the ALJ concluded that this showed that Plaintiff believed she was able to work (TR. 19). The ALJ also found Plaintiff's admission that she was buying pain medication off the street to be inconsistent with her statements to medical providers that she could not afford her medication (TR. 19).

Here the ALJ explained the reasons for his credibility assessment, the inclusion of one boilerplate sentence does not take anything away from an otherwise proper credibility analysis. The use of such boilerplate is problematic only when it appears "in

11

the absence of a more thorough analysis." *Hardman*, 362 F.3d at 679; *accord, Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). In this case, the ALJ's decision reflects the required analysis and refers to specific evidence in support of his conclusions. Plaintiff's first claim of error is without merit and should be rejected.

## II. Weighing of Medical Opinions

In her second claim of error, Plaintiff contends that the ALJ improperly weighed the medical opinions. (Plaintiff's Opening Brief at pages 12-15). Plaintiff states that the ALJ "expressed doubts as to [her] mental assessment of the mental residual functional capacity reports. . . ." (See Plaintiff's Opening Brief at page 12). Although Plaintiff does not appear to take exception to the correctness of the ALJ's definition of "acceptable medical sources," she claims that after these definitions were provided "self-conflict and contradiction commence to appear in the ALJ decision." *Id.* In arguments that can only be characterized as confusing, then Plaintiff begins to criticize the ALJ's treatment of the medical evidence. *Id.* at 13.

It seems that Plaintiff complains that the ALJ did not give adequate weight to the opinion of consultative examining psychiatrist Alzira F. Vaidya, M.D., instead giving "preferential" weight to Nurse Practitioner Stewart. (See Plaintiff's Opening Brief at pages 13-14). However, the decision reveals that the ALJ agreed with Dr. Vaidya's diagnoses of depression and social phobia, and even explained what limitations had been imposed in light of Plaintiff's mental impairments:

> The [Plaintiff] no doubt has social phobia and depression

12

> over the events in her life, however, her daily activities are not so restrictive to prevent her from working. The Administrative Law Judge has taken into consideration the limitations the [Plaintiff] may have and has placed limitations in the residual functional capacity of simple, repetitive tasks and no more than incidental contact with the public to address her mental limitations

(TR. 19). Moreover, there is no indication that the ALJ gave "preferential" weight to the mental functional capacity questionnaire of nurse practitioner Stewart. In fact, Stewart found that Plaintiff's medical condition "imposes no more than minimal limitations." (TR. 20). The ALJ states that he gives this non-acceptable medical source's opinion "some weight" because she had treated Plaintiff for general health matters for at least two years, giving Stewart "insight to the [Plaintiff's] condition" (TR. 20). The ALJ did not give "preferential" weight to Stewart's opinion, and Plaintiff's complaints regarding the relative weight given to the opinions of Dr. Vaidya and nurse practitioner Stewart are perplexing in that the ALJ gave more weight to the opinion of Dr. Vaidya who found her to be *moderately* impaired as opposed to Stewart's finding of *minimal* limitations.

Plaintiff then makes a rather sharp turn, complaining that the ALJ "gave rote recitation to the . . . 'special [psychiatric] technique' . . . but then entirely failed to *apply*" it to Plaintiff's mental impairments. (Plaintiff's Opening Brief, 14). It appears that Plaintiff is conflating the psychiatric review technique employed by the ALJ at step two with the ALJ's consideration of Plaintiff's mental impairments in reaching his step four RFC finding. (*See* TR. 14-15, citing SSR 96-8p). As noted above, the ALJ specifically explained how he took Plaintiff's severe mental impairments into account in reaching

13

the RFC finding (TR. 19).

The undersigned disagrees with Plaintiff's argument that the Court is left to "guess and grasp at the winds as to what was blowing through the mind of the ALJ when he made his RFC finding and credibility finding for [Plaintiff] other than forbidden boilerplate." To the contrary, the ALJ's decision is thorough and his conclusions are explained in accordance with the applicable legal standards. Plaintiff's second claim of error is therefore without merit.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **March 1, 2013**.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 15, 2013.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE